UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NFL PROPERTIES LLC,

|                          | Plaintiff, | Case No. _____ |

-against-

ZEIKOS, INC.,

|                          | Defendant. |

## COMPLAINT

Plaintiff NFL Properties LLC ("Plaintiff" or "NFLP"), by and through its attorneys, Haynes and Boone, LLP, for its Complaint against defendant, Zeikos, Inc. ("Zeikos" or "Defendant"), respectfully alleges as follows on knowledge as to its own acts and on information and belief as to all other matters except as indicated otherwise:

## NATURE OF THE ACTION

1.      This is a Complaint for breach of contract and trademark infringement, dilution, and unfair competition arising from Defendant's breach of a license agreement that it entered into with NFLP effective April 1, 2014 (the "License Agreement").

2.      As detailed herein, Defendant has breached numerous provisions of its License Agreement with NFLP including, but not limited to, provisions requiring Defendant to: (i) report sales of all merchandise sold in connection with the rights conveyed under the License Agreement (the "Licensed Products"); (ii) make payments of royalties (plus interest) to NFLP as a result of Defendant's sales of the Licensed Products; (iii) make certain other payments owed to NFLP under the License Agreement; and (iv) cease use of the marks licensed pursuant to the terms of the License Agreement (the "Licensed Marks") following NFLP's termination of the License Agreement on October 12, 2015 -- all in violation of NFLP's contractual and intellectual

property rights.

## THE PARTIES

3.      Plaintiff NFLP is a Delaware Limited Liability Company with a principal place of business located at 345 Park Avenue, New York, New York 10154.

4.      Upon information and belief, Defendant Zeikos is a New York corporation with headquarters located at 19 Progress Street Edison, New Jersey 08820.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332 and 1338, and 15 U.S.C. §1121, and, as to certain claims, 28 U.S.C. § 1367.  Further, under Paragraph 25 of Exhibit I to the License Agreement (the "Forum Selection Clause"), Defendant expressly agreed to the jurisdiction of the state or federal courts of New York City with respect to any dispute arising under the License Agreement.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this jurisdiction and pursuant to the License Agreement's Forum Selection Clause.

## FACTS RELEVANT TO THE CLAIMS FOR RELIEF

### A.      *The License Agreement*

7.      On or about April 7 and 8, 2014, Defendant and NFLP executed the License Agreement at issue.  The License Agreement is dated April 1, 2014, and was scheduled to run for a two year term beginning April 1, 2014 and ending on March 31, 2016.

8.      Pursuant to the License Agreement's terms, NFLP granted Defendant a *non-exclusive* license to use the Licensed Marks owned by NFLP -- all of which relate to the National Football League (the "NFL"), its two conferences (the AFC and the NFC), and the thirty-two

professional football teams that comprise the NFL (the "NFL Member Clubs") -- in connection with Defendant's manufacture, distribution, sale and advertising of the Licensed Products. The Licensed Products consisted of various forms of earphones, headphones, portable speakers, universal remote controls and videogame controllers.[1]  Many, if not all, of the Licensed Marks are subject to a federal and/or state trademark registration. For example, the famous NFL Shield logo is covered by several federal registrations including U.S. Reg. Nos. 3,581,281; 4,682,232; and 3,138,589. The NFL team Licensed Marks licensed under the License Agreement are similarly subject to federal and/or state trademark registration. For example, the New York Jets logo and related marks are covered by numerous federal registrations including U.S. Reg. Nos. 3,380,360; 5,274,425; 3,387,771; 3,377,269; and 3,955,022. The New York Giants logo and related marks are covered by numerous federal registrations including U.S. Reg. Nos. 3,421,494 and 2,774,776.

**B.**     ***The License Agreement's Royalty Reporting And Payment Terms***

9.     The License Agreement imposed certain payment obligations on Defendant and set specific rates for the payment of royalties to NFLP as a result of Defendant's sales of the Licensed Products.

10.     Under the License Agreement, Defendant was obligated to report the royalties owed to NFLP for sales of the Licensed Products on a monthly basis. The royalty payments owed with respect to each month of the License Agreement's term (the "Royalty Amounts") were due to be paid no later than the fifteenth day of the following month.

11.     Along with its payment of the Royalty Amounts, Defendant was obligated to provide full and accurate data concerning the net sales of each style of each Licensed Product

---

[1]     The License Agreement is governed by a Confidentiality Provision. As a result, NFLP will not disclose the specific terms of the License Agreement in this Complaint and will refer to the general terms of the License Agreement only to the extent needed to put Defendant on notice of NFLP's claims.

sold during the preceding month (the "Reporting Statements") via an electronic reporting system (the "NFL Reporting System").

12.     Among other things, Defendant was obligated to provide data regarding: (i) Defendant's gross sales of Licensed Products; (ii) itemized deductions from gross sales of Licensed Products; (iii) the gross sales of any allowable returns of Licensed Products made during the prior reporting period; and (iv) the resulting net sales of Licensed Products on which Defendant calculated the Royalty Amount due.

13.     The License Agreement provided for a non-refundable minimum royalty payment guarantee for each fiscal year of the License Agreement's term (the "Minimum Program Guarantee") regardless of Defendant's actual sales.

14.     A portion of the Minimum Program Guarantee was due on or before April 15 of each year in which the License Agreement was in effect (the "Program Advance").  The balance of the Minimum Program Guarantee, to the extent not covered by royalty payments made during the year, was due on or before February 15 of the year following the year for which the Minimum Program Guarantee was owed.

15.     Pursuant to the License Agreement's terms, payments made by Defendant toward satisfaction of the Program Advance or Minimum Program Guarantee for a particular year would be credited against royalty payments to which NFLP would otherwise be entitled under the License Agreement for that year.

16.     The License Agreement provided for interest to accrue at a rate of 1.5% per month on any payment due under the License Agreement that remained unpaid within fifteen (15) days after becoming due.

**C.      *Additional Terms Relevant To NFLP's Claims***

17.     The License Agreement contained numerous additional terms affecting Defendant's sale of Licensed Products including terms that placed restrictions on Defendant's distribution channels and sales outside of the United States (the "Distribution Restrictions"), and terms that created favorable pricing for sales to the NFL Member Clubs (the "Favorable Pricing Terms").

18.     The License Agreement also expressly confirmed that NFLP was the exclusive owner of the Licensed Marks and any uses of the Licensed Marks by Defendant, and further confirmed that Defendant had no rights to the Licensed Marks except as permitted by NFLP.

19.     Under the License Agreement's terms, NFLP was entitled to request and receive audited financial statements of Defendant.  Defendant retained the right to satisfy such requirement by providing NFLP with a letter of credit guaranteeing payment of the Minimum Program Guarantee amount due on the License Agreement for each fiscal year.

20.     Defendant was also obligated to provide NFLP with sales projections for the Licensed Projects on a monthly basis both for the upcoming month and the corresponding fiscal year on or before the 15th day of each month during the License Agreement's term.

21.     NFLP also had the right under the License Agreement -- during the License Agreement's term and for at least three full years after expiration or termination of the License Agreement -- to inspect and audit Defendant's records regarding its payment, reporting, and compliance obligations under the License Agreement.

22.     Defendant was obligated to compensate NFLP for the cost of any audit that disclosed a misreporting of royalty payments or net sales by more than a certain percentage along with the amount of any deficiency in royalty payments (plus interest).

23.     Defendant acknowledged that NFLP had no express or implied obligation to

renew the License Agreement and that NFLP would have no liability to Defendant for any

expenses allegedly incurred by Defendant in anticipation of any renewal or extension of the

License Agreement.

**D.     *NFLP's Termination And Post-Termination Rights Under The License Agreement***

24.     The License Agreement provided NFLP with certain termination rights including

the right to terminate the License Agreement in the event of, *inter alia*, any of the following:

      (i)      Defendant's failure to make any payment or deliver any statement or evidence of compliance required under the License Agreement if left uncorrected after ten days written notice of such default;

      (ii)     Defendant's failure to satisfy a certain minimum percentage of the Minimum Program Guarantee through royalty payments on actual sales of Licensed Products;

      (iii)    Defendant's failure to make any payment or deliver to NFLP any statement required under the License Agreement two or more times in any fiscal year;

      (iv)    Defendant's failure to make its premises, records, or business information available to NFLP or to otherwise fail to provide full and complete information as required under the License Agreement; and

      (v)     Defendant's failure to comply with the sales and distribution restrictions imposed by the License Agreement.

25.     The License Agreement provided for liquidated damages in the event that

Defendant breached any provision of the License Agreement that did not involve or result in the

actual sale or distribution of the Licensed Products such as the License Agreement's reporting

obligations.  The License Agreement provided that liquidated damages could accrue at an

amount of not less than $10,000 *per occurrence* of a relevant event of breach without prejudice

to any of NFLP's other rights in law or equity.

26.     In the event NFLP terminated the License Agreement prior to the end of a term,

Defendant was obligated to pay NFLP all royalties owed on all sales of the Licensed Products made prior to termination of the License Agreement as well as all other amounts due to NFLP under the terms of the License Agreement including, without limitation, any Minimum Program Guarantee that would have been due under the License Agreement had it not been terminated, within thirty days of the termination of the License Agreement.

27.     Defendant was obligated to provide NFLP with a statement detailing its inventory of Licensed Products within ten days after the NFLP's delivery of a notice of termination to Defendant.

28.     The License Agreement provided that, after the expiration or termination of the License Agreement, all rights granted under the License Agreement would revert back to NFLP and that Defendant would refrain from any further use of, simulation of, or reference to any and all of the Licensed Marks.  Defendant was specifically prohibited from taking any further orders for Licensed Products following termination or expiration of the License Agreement absent written notification that NFLP would be renewing the License Agreement.

29.     The License Agreement provided that any inventory of Licensed Products remaining after the expiration or termination of the License Agreement would be disposed of in a manner determined by NFLP at its discretion.

E.     *The License Agreement's Remaining Relevant Terms*

30.     The License Agreement instructs that it is governed by, and construed in accordance with, New York law.

31.     The parties further agreed that neither party could waive or modify any of the License Agreement's terms unless such waiver or modification was in a writing signed by both parties.

32.     The License Agreement also contained a merger clause which makes clear that the License Agreement contains the entire agreement and understanding between the parties with respect to the subject matter and supersedes all prior or contemporaneous agreements or understandings between the parties.

33.     Finally, the License Agreement provides that in the event either party brings a legal or equitable action against the other party to prevent or remedy a breach of the License Agreement, the prevailing party shall be entitled to recover its reasonable legal fees and expenses in such action from the other party.

## F.     *Zeikos' Breaches Of The License Agreement*

34.     Zeikos failed to satisfy many of its payment and non-payment related obligations under the License Agreement on numerous occasions in breach of the License Agreement.

35.     Among other things, Zeikos failed to satisfy its Minimum Guarantee Payment in either year of the License Agreement's Term and specifically failed to make payment of:

(i)     no less than $184,816.16 in royalties due for the first year of the License Agreement's term (the "2014 Payment Default");

(ii)    the required Program Advance for 2015 fiscal year (the "2015 Advance Payment Default"); and

(iii)   interest due on certain unpaid amounts owed under the License Agreement (the "Interest Payment Default").

36.     Zeikos also failed to satisfy numerous reporting obligations under the License Agreement including, but not limited to:

(i)     failing to deliver required royalty Reporting Statements (the "Royalty Statement Default") on more than two occasions in both years of the License Agreement's term (2014 and 2015);

(ii)    failing to abide by certain distribution and sale restrictions imposed under the License Agreement; and

       (iii)    failing to provide NFLP with accurate statements of sales and/or royalties owed as required under the License Agreement.

37.    Defendant's last payment of royalties under the License Agreement occurred in November 2014 for sales that took place in September 2014. Defendant has made no payments of any sort due to NFLP under the License Agreement -- of royalties, interest or otherwise -- since November 2014.

38.    Defendant also failed to timely provide NFLP with the requisite Reporting Statements due under the License Agreement after February 2015.[2]

## G.    *NFLP's Termination Of The License Agreement*

39.    NFLP advised Zeikos of the numerous incidents of Zeikos' default under the License Agreement on multiple occasions between November 2014 and October 2015.

40.    As a result of Zeikos' numerous breaches of its payment, reporting, and performance-related obligations under the License Agreement, NFLP advised Zeikos by letter dated October 12, 2015, that it was terminating the License Agreement effective immediately (the "Termination Letter").

41.    Despite providing Defendant with the Termination Letter in October 2015, Defendant continued to make sales of Licensed Products beyond NFLP's termination of the License Agreement. These sales violated Defendant's obligation to cease all sales of Licensed Products following termination of the License Agreement.

## H.    *NFLP's Partial Audit Of Defendant's Records*

42.    During the summer of 2016 NFLP attempted to audit Defendant's records in accordance with its rights under the License Agreement in order to determine the amount of

---

[2]    In fact, Defendant did not provide NFLP with the requisite Reporting Statements for April through September 2015 until after NFLP terminated the License Agreement in October 2015. And Defendant has yet to provide a Reporting Statement for March 2015.

royalties still owed to NFLP and to assess the extent of Defendant's additional breaches of its

payment, reporting, and performance-related obligations under the License Agreement.

43.     Despite assenting to the audit, both in the License Agreement and at the time of

the audit request by NFLP, Zeikos did not respond to a number of the auditor's inquiries.

44.     To the extent Defendant responded to the inquiries of NFLP's auditors, many of

Defendant's responses were incomplete or inaccurate and failed to include even the most basic

information relevant to Defendant's sales of the Licensed Products.

45.     Based on the limited information provided by Defendant, NFLP's auditor

determined Defendant still owed NFLP a minimum of $536,617 in back royalties plus interest

and other charges under the now terminated License Agreement.

46.     The audit also determined that Defendant breached numerous additional

obligations under the License Agreement by, among other things: (i) overcharging NFL Member

Clubs for sales of Licensed Products; (ii) failing to accurately report sales to distributors; (iii)

and reporting unauthorized foreign sales as sales within the United States.

### FIRST CAUSE OF ACTION
**(Breach of the License Agreement)**

47.     NFLP repeats, reiterates, and realleges each and every allegation contained in

Paragraphs 1 through 46 as if fully set forth herein.

48.     The License Agreement is a valid enforceable contract.

49.     NFLP fully performed its obligations under the License Agreement.

50.     As more fully set forth herein, Defendant breached the License Agreement by,

*inter alia*, failing to satisfy its payment, reporting, and performance-related obligations under the

License Agreement.

51.     By virtue of the foregoing, Defendant is liable to NFLP in the amount to be

determined at trial but in no event less than: (i) $536,617 plus interest[3] as a result of Defendant's failure to make the requisite Royalty Payments due to NFLP under the License Agreement; (ii) liquidated damages of no less than $10,000 *per occurrence* of Defendant's breach of its reporting and performance-related obligations under the License Agreement; and (iii) NFLP's reasonable attorney's fees and costs associated with bringing this action including, but not limited to, the costs of any audit conducted by NFLP as permitted under the License Agreement.

**SECOND CAUSE OF ACTION**
**(Unjust Enrichment)**

52.     NFLP repeats, reiterates, and realleges each and every allegation contained in Paragraphs 1 through 51 as if fully set forth herein.

53.     Although the parties' relationship is governed by a valid and enforceable contract, should the Court determine otherwise or to the extent Defendant's actions or inactions fall outside the scope of the License Agreement, NFLP alleges, in the alternative, that it provided Defendant with certain valuable rights in the Licensed Marks.

54.     Defendant accepted the benefit of the rights conveyed to it by NFLP and has failed to compensate NFLP for the benefits it received.

55.     As a result, Defendant has been unjustly enriched at the expense of NFLP, and NFLP is entitled to damages, in an amount to be determined at trial, but in no event less than $536,617 plus interest.

**THIRD CAUSE OF ACTION**
**(Trademark Infringement, Unfair Competition, False Designation of Origin, and Dilution in Violation of the Lanham Act, New York State law, and the Common Law)**

56.     NFLP repeats, reiterates, and realleges each and every allegation contained in Paragraphs 1 through 55 as if fully set forth herein.

---

[3]     Under the License Agreement, NFLP is entitled to interest at a rate of 1.5% per month on any payments due under the License Agreement that remain unpaid fifteen days after such payments become due.

57.     Through NFLP's extensive and exclusive use and promotion, as well as substantial sales, the Licensed Marks have garnered massive and widespread public recognition in the United States.  Each of the Licensed Marks standing alone, and the Licensed Marks in the aggregate, have become well-known and famous among consumers.  The Licensed Marks are inherently distinctive and have also acquired distinctiveness and secondary meaning as a result of, for example, NFLP's aforementioned extensive and exclusive use, promotion and substantial sales.

58.     Many, if not all, of the Licensed Marks are federally registered.

59.     Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides that "[a]ny person who shall, without the consent of the registrant -- use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

60.     Defendant has marketed, promoted, and/or sold products bearing the Licensed Marks following termination of the License Agreement and without the consent of NFLP.  Such use has caused confusion and mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act, and will, if it persists, likely continue causing such confusion and mistake.

61.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion or to cause

mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods [or] services . . . shall be liable in a civil action . . . ."

62.     Defendant's actions in continuing to market, promote, and/or sell products bearing the Licensed Marks following termination of the License Agreement constitute, among other violations:

> a.     a false designation of origin;
>
> b.     a false and misleading description of fact; and
>
> c.     a false and misleading representation of fact;

that has caused and is likely to continue to cause confusion, mistake, or deception, for example, by creating a false impression that NFLP sponsors or approves of the products that Defendant has sold and/or is selling, all in violation of Section 43(a) of the Lanham Act.

63.     Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides that, "the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."

64.     Defendant's use of the Licensed Marks in connection with its sale of goods following NFLP's termination of the License Agreement has caused and will, if it persists, continue to cause dilution and disparagement of the distinctive quality of the Licensed Marks, and has lessened and will continue to lessen the capacity of the Licensed Marks to identify and distinguish the goods and services of NFLP, all in violation of Section 43(c) of the Lanham Act.

65.     Defendant's use of the Licensed Marks constitutes a false designation of origin

and a false description or representation that Defendant's products originate from, or are offered, sponsored, authorized, licensed by, or otherwise connected with NFLP, and are thereby likely to confuse consumers.  As a result of Defendant's conduct, the public is likely to believe that Defendant's products designated with the Licensed Marks are sponsored by, or affiliated with, NFLP.

66.     Defendant's continued sale of Licensed Products and/or continued use of the License Marks falsely represents that its products designated with the Licensed Marks emanate from, or have been approved by, NFLP while placing beyond NFLP's control the quality of such products.

67.     Defendant's conduct is gross, wanton, and willful, and is intended to reap the benefit of NFLP's goodwill in the Licensed Marks, and constitutes trademark infringement and unfair competition under New York common law.

68.     Upon information and belief, Defendant's ongoing acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act and the applicable common law are malicious, fraudulent, willful, and deliberate.

69.     Any ongoing acts of infringement of the Licensed Marks by Defendant in violation of Sections 32, 43(a), and 43(c) of the Lanham Act will continue to cause irreparable harm to NFLP.

70.     To the extent Defendant continues to manufacture, sell, or advertise goods bearing the Licensed Marks, NFLP has no adequate remedy at law.

71.     In light of the foregoing, NFLP is entitled to injunctive relief and an award of its actual damages.  Due to Defendant's gross, wanton, willful fraud, and other morally culpable conduct, NFLP is also entitled to punitive damages.

72.     No previous injunctive relief has been awarded with respect to this matter in this case or any other case.

## FOURTH CAUSE OF ACTION
### (Accounting)

73.     NFLP repeats, reiterates, and realleges each and every allegation contained in Paragraphs 1 through 72 as if fully set forth herein.

74.     Pursuant to the terms of the License Agreement, Defendant was required to provide NFLP with access to, *inter alia*, all financial information relating to its activities under the License Agreement including, but not limited to, its sales and distribution of the Licensed Products.

75.     Defendant owes royalty payments, in an amount based on Defendant's net sales of the Licensed Products, in an exact amount unknown to NFLP and which cannot be ascertained without an accounting of, *inter alia*, the receipts and disbursements, profits and loss statements, and other financial materials, statements, and books from Defendant.

76.     NFLP is therefore entitled to an accounting of, *inter alia*, the receipts and disbursements, profits and loss statements, and other financial materials, statements, and books from Defendant including, but not limited to, an accounting of any profits enjoyed by Defendant as a result of its unlawful conduct.

## FIFTH CAUSE OF ACTION
### (Trademark Dilution And Injury To Business
### Reputation Under N.Y. GEN. BUS. LAW § 360-*l*)

77.     NFLP repeats, reiterates, and realleges each and every allegation contained in Paragraphs 1 through 76 as if fully set forth herein.

78.     NFLP has extensively and continuously promoted and used the Licensed Marks in the United States, and these marks have become distinctive and well-known symbols of NFLP's

products.

79.     Defendant's unauthorized use of NFLP's Marks is likely to injure NFLP's business reputation, and dilutes and is likely to dilute the distinctive quality of NFLP's Licensed Marks by eroding the public's exclusive identification of the Licensed Marks with NFLP, tarnishing the positive associations of the Licensed Marks, and lessening the capacity of the Licensed Marks to identify and distinguish NFLP's goods.

80.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with NFLP's Licensed Marks.

81.     Defendant is causing and will continue to cause irreparable injury to NFLP's goodwill and business reputation in violation of N.Y. Gen. Bus. L. § 360-*l*, and NFLP is entitled to injunctive relief.

82.     No prior request for this relief has been sought in this case or any other case.

**WHEREFORE**, NFLP requests that judgment be entered in its favor and against Defendant as follows:

a)     On the First Cause of Action against Defendant in the amount to be determined at trial but in no event less than:

> (i)     $536,617 plus interest as a result of Defendant's failure to make the requisite Royalty Payments due to NFLP under the License Agreement;

> (ii)    liquidated damages of no less than $10,000 *per occurrence* of Defendant's breach of its reporting and performance-related obligations under the License Agreement; and

> (iii)   NFLP's reasonable attorney's fees and costs associated with bringing this action including, to the extent applicable, the costs of any audit of Defendant's records to the extent such audit discloses a misreporting of royalty payments or net sales pursuant to the terms of the License Agreement.

b)      In the alternative, on the Second Cause of Action against Defendant, in an amount to be determined at trial but in no event less than $536,617 plus costs and interest at the maximum amount permitted by law.

c)      On the Third Cause of Action for violations of the Lanham Act and New York State Common Law, an order:

i.      Temporarily, preliminarily, and permanently restraining and enjoining Defendant, its agents, servants, employees, attorneys, and all those who act in concert or participating with Defendant from engaging in the following acts:

(a)      manufacturing, selling, or using products or advertising containing any of NFLP's Licensed Marks, trade names, trade dress, and other proprietary materials, or any other names, marks, and trade dress that is the same or substantially similar to NFLP's Licensed Marks, service marks, or trade name;

(b)      otherwise infringing the Licensed Marks; and

(c)      diluting the distinctiveness of the Marks and otherwise injuring NFLP's reputation in any manner;

ii.      Requiring Defendant to turn over all remaining Licensed Products to NFLP in accordance with the terms of the License Agreement;

iii.      requiring that Defendant file with the Court and serve on NFLP within thirty (30) days after the issuance of any injunction, a report in writing and under oath setting forth in detail the manner and form with which it has complied with any injunction issued by the Court; and

      iv.    granting NFLP compensatory damages for infringement plus treble damages for willful use of the Licensed Marks post-termination of the License Agreement together with interest, attorneys' fees, and costs of suit.

d)    On the Fourth Cause of Action for an Accounting, an order that Defendant account to NFLP for any and all sales of the Licensed Marks as well as with respect to Defendant's activities in connection with the Licensed Agreement both during its term and following its termination.

e)    On the Fifth Cause of Action for Trademark Dilution And Injury To Business Reputation Under N.Y. GEN. BUS. LAW § 360-*l*, an injunction:

      i.    preventing Defendant from any further sale or distribution of any products, packaging, advertising and promotional materials bearing the Licensed Marks;

      ii.    requiring Defendant to recall from the trade and all distribution channels any and all products, packaging, advertising and promotional materials bearing the Licensed Marks including, but not limited to, the Licensed Products; and

      iii.    preventing Defendant from engaging in any other activity reasonably likely to lead to dilution of the Licnesed Marks and/or otherwise cause injury to the business reputation of the NFLP.

f)    To the extent not already provided for herein, awarding NFLP its actual damages.

g)    Imposing a requirement that any award of profits resulting from Defendant's infringement, unfair competition and false designation of origin be trebled.

h)      To the extent not already provided for herein, awarding NFLP interest, including pre-judgment interest, on the foregoing sums.

i)      To the extent not already provided for herein, awarding NFLP its costs in connection with this action, including, but not limited to, reasonable attorneys' fees and expenses.

j)      Awarding NFLP punitive damages to the extent permitted by law.

k)      Directing such other action as the Court may deem appropriate to prevent the trade and public from deriving the mistaken impression that any products or services offered, advertised, or promoted by or on behalf of Defendant are authorized by NFLP or related in any way to NFLP's products.

l)      Awarding such other relief as this Court deems just and equitable.

Dated:   November 22, 2017

HAYNES AND BOONE, LLP
*Attorneys for Plaintiff*

Jonathan D. Pressment
Charles L. Glover
30 Rockefeller Plaza
26th Floor
New York, NY 10112
Telephone: (212) 918-8961
Facsimile: (212) 884-9561
jonathan.pressment@haynesboone.com

4839-4309-2053_1